UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DANIEL E. GUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:17-CV-363-REW |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | OPINION AND ORDER |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Daniel Gum appeals the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed dueling dispositive motions.[1] The Court **GRANTS** the Commissioner's motion for summary judgment (DE #18) and **DENIES** Gum's motion for judgment on the pleadings (DE #15) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Gum is currently 53 years old. *See, e.g.*, R. at 321 (indicating date of birth of 3/2/1965). He alleges disability beginning on (as amended) November 14, 2014. *See* R. at 14, 44-45, 148-49. Gum applied for benefits on June 13, 2014. R. at 148-49. His claims were initially denied on September 2, 2014, *see* R. at 85-88, and upon reconsideration on November 20, 2014. *See* R. at 90-92. Gum then filed a written request for a hearing on December 8, 2014. R. at 97-98. Administrative Law Judge ("ALJ") Don C. Paris held a video hearing on the application on

---

[1] Gum styled his motion as one seeking judgment on the pleadings. DE #15. The Acting Commissioner styled hers as a motion for summary judgment. DE #18. General Order 13-7 permits either type. *See* DE #14, at 2.

March 15, 2016. R. at 31-59. At the hearing, Gum testified; attorney Jason K. Baril represented

him. R. at 14, 83-84. An impartial vocational expert (VE)[2] also testified. R. at 49-58. The ALJ

subsequently denied Gum's claims on April 19, 2016. R. at 14-24. The Appeals Council denied

review and thus upheld the ALJ's decision on July 7, 2017. R. at 1-3.

The ALJ made several particular findings in the required sequence. He determined that

Gum did not engage in substantial gainful activity from November 14, 2014, the amended

alleged onset date, through April 19, 2016, the date of decision. R. at 16. The ALJ next

determined that Gum has two severe impairments. *Id.* However, ALJ Paris then found that Gum

did "not have an impairment or combination of impairments that [met] or medically equal[ed]

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at

18. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 18-22.

Although ALJ Paris found Gum "unable to perform any past relevant work," the ALJ determined

that "there are jobs that exist in significant numbers in the national economy that [Gum] can

perform[.]" R. at 22-23. Based on all these considerations, the ALJ ruled that Gum was not

"under a disability . . . from . . . November 14, 2014, through the date of th[e] decision," April

19, 2016. R. at 24. Unsatisfied with the result of the SSA's administrative process, Gum turned

to federal district court for review.

## II. ANALYSIS

### A. Standard of Review

The Court has carefully read the ALJ's full decision and all medical reports it cites. The

Court also read and considered the full administrative hearing and record. Judicial review of the

ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether

---

[2] The transcript reflects that the VE was Christopher Ryman, R. at 49; the ALJ identified the VE
as Ralph Crystal in the written decision, R. at 14.

substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's

impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

> B.      *Substantial evidence supports the ALJ's RFC determination.*

Gum generally argues that substantial evidence does not support ALJ Paris's RFC determination. Gum's chief complaint is that the ALJ "improperly speculated that 'passage of time' would result in improvement in [Gum]'s knee impairment, and used this unsupported lay assumption to reject the opinion of consultative medical examiner Dr. McEldowney." DE #15-2, at 11. The Acting Commissioner, on the other hand, contends that the ALJ "reasonably evaluated

the medical source opinions," "reasonably concluded that [Gum]'s knee would continue to improve" given the entire record, and formulated an RFC "supported by substantial evidence." DE #18, at 5-8.[3]

ALJ Paris, upon "careful consideration of the entire record," R. at 16, crafted the following particular RFC:

> [Gum] has the residual functional capacity to occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds in the performance of light work as defined in 20 CFR 404.1567(b); he can stand/walk 4 hour total during an 8-hour workday and can sit for 6 hours total during an 8-hour workday. He can frequently climb ramps and stairs; he can occasionally kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. He must avoid all exposure to full body vibrations and hazards such as unprotected heights and moving machinery.

R. at 18 (all as in original). The ALJ, in making this determination, "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" R. at 19. After 2.5 pages of medical records review, the ALJ specifically turned to Dr. McEldowney's examination. R. at 21. Judge Paris devoted a lengthy paragraph to reviewing McEldowney's conclusions and ultimately gave "some weight to the examination and opinion of this physician." *Id.* The ALJ, in light of his evaluation of McEldowney's opinions, and considering "the passage of time, allowing improvement in [Gum]'s condition," found "that the totality of this record supports no more than the limitations

---

[3] The Acting Commissioner asks the Court to "base its review on the 2016 version of the regulations and SSRs 96-2p, 96-5p, 96-6p, and 06-03p." DE #18, at 5 n.1. Gum did not address this in his brief. Without the benefit of adversarial briefing on the subject (and, thus, with no contestation from Claimant), the Court agrees with Commissioner Berryhill and has based its review on the regulations and SSRs in effect at the time of the administrative decision. *See Scott v. Berryhill*, No. 5:16-CV-108-REW, 2017 WL 875480, at *5 n.7 (E.D. Ky. Mar. 3, 2017) (collecting cases for the proposition that "it is proper to apply . . . the ruling and legal guidance in effect at the time of Scott's administrative disability determination"); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007).

described in" the assigned RFC. R. at 21-22. The ALJ continued by reviewing and commenting on other medical evidence in a comprehensive review of Gum's records. R. at 22.

Gum faults the ALJ's decision-making in a few ways, but the central contention involves Judge Paris's treatment of McEldowney's singular 11/14/14 examination, "requested by Law Office of James D. Howes, PLLC," apparently as part of Gum's related workers' comp claim. *See* R. at 321-26;[4] *see also* DE #15-2, at 7. Gum takes specific issue with the ALJ considering "the passage of time, allowing improvement in [Gum]'s condition" in the RFC analysis. While McEldowney opined that Gum "exacerbat[ed] . . . a previously dormant and asymptomatic condition of his left knee," the examiner advised that "all further treatment which may even include future knee replacement will be considered reasonable and necessary[.]" R. at 325. Indeed, McEldowney recommended that Gum "continue with pain management with an anti-inflammatory medication and hyaluronidase injections over the next 3 to 6 months and **if this patient remains symptomatic** repeat MRI to better evaluate the cartilage of the left knee." R. at 325 (all as in original, but boldface added). Dr. McEldowney thus affirmatively endorsed a prospective course of treatment for Gum—one that, by the surgeon's own reckoning, may alleviate or eliminate the knee issues. Only "if [Gum] remain[ed] symptomatic" after the recommended treatment—explicitly contemplating that, with the passage of time, Gum's knee problems could improve or altogether cease—did McEldowney suggest an additional MRI (and *only* an additional MRI), merely "to better evaluate" the issue.

Thus, the ALJ manifestly did not here "render[] independent medical judgment surrounding assumptions regarding the 'passage of time' necessarily leading to 'improvements in

---

[4] No party asserts that McEldowney's 12/19/14 "Addendum" impacts the issues before the Court. *See* R. at 166-67. Gum also does not claim that McEldowney is a treating physician under the meaning of 20 C.F.R. § 404.1527(a)(2) or SSR 96-2p for purposes of application of the "treating physician rule." To the contrary, Claimant calls McEldowney a "consultative medical examiner." DE #15-2, at 11.

the claimant's condition,' and use[] this lay assumption to reject the opinion of Dr. McEldowney." DE #15-2, at 11-12. Quite to the contrary, ALJ Paris merely noted what Dr. McEldowney himself said—that Gum's knee condition duration and improvement explicitly depended on the passage of time and the potential outcome(s) of certain treatment options. The Court does not doubt that it would be improper for an ALJ to "succumb to the temptation to play doctor," *Witte v. Berryhill*, No. 3:15-CV-580, 2017 WL 2881148, at *8 (M.D. Tenn. July 6, 2017), but Judge Paris, by parroting the surgeon's prognosis and weaving in contextual analysis of Gum's long-term medical history, carefully avoided that very temptation here.

Further, substantial record evidence supports ALJ Paris's quite reasonable conclusion that Gum's knee condition improved post-11/14/14.[5] For instance, on November 2, 2015, Gum reported to APRN Leanne Brown (his primary care provider, R. at 36) that he had been "mowing leaves the other day." R. at 342. This shows stark improvement from July 2014, when Gum told the SSA that one "change [in] the way [a] chore[] w[as] done" was that his son now "mows yard" instead of him, R. at 183, and when Ms. Stone informed the Commissioner that Gum can do **no** household chores, including "mowing," and he used to be able to mow pre-injury but no longer can. R. at 187-88. Further, in May 2015, Nurse Practitioner Brown "strongly encouraged" Gum to get "daily exercise" of "at least 30 minutes." R. at 354. In April 2015, Gum self-denied back pain, joint pain, joint swelling, having a limited range of motion, muscle aches, muscle weakness, and stiffness. R. at 358. This shows a marked improvement from, for example, December 2014, when Gum did complain of joint pain, R. at 376—pain the ALJ explicitly recognized and considered as part of the RFC formulation. R. at 19. Additionally, in March

---

[5] The Court may, of course, consider pieces of record evidence "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). An "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Here, Judge Paris affirmed that he carefully considered "the entire record" in evaluating disability and formulating Gum's RFC. R. at 16, 18.

2016, at the ALJ hearing, Gum affirmed that he uses an elliptical machine[6] "at least three times" per week and that he "walk[s] every day a half mile," all in accordance with medical directives. R. at 38. As the ALJ reasonably summarized, Gum's "daily activities are not limited to the extent one would expect, given his alleged symptoms and limitations." R. at 22.[7]

Thus, to the Court, the ALJ did not speculate but rather reasonably assessed McEldowney's November 2014 views in light of the record and actual course of events between that examination and the March 2016 decision. In December 2014, Gum reported 10/10 pain to ARNP Brown. R. at 374. A year later, Brown observed normal musculoskeletal features and a normal gait. R. at 340. Gum also went from 8/10 pain in January 2015 to affirmative denial of pain by April 2015. *Compare* R. at 368, *with* R. at 358-59 ("DENIES: Joint pain, Joint swelling, Limited range of motion, Muscle aches, Muscle weakness, Stiffness."). Brown observed normal gait in October 2015, R. at 350, and Gum was mowing leaves by November 2015. R. at 342. Substantial evidence of sharp improvement exists, and this buttresses the ALJ's treatment of McEldowney's views. The Court further notes that Gum appeared barely able to walk before McEldowney (who noted the necessity of cane use). No provider ever prescribed a cane, *see* R. at 46, and Gum plainly ambulated without that through the improving period of 2015. In January

---

[6] The Court also notes that Gum's weight and BMI dropped between the time of the original knee injury and the time of the hearing. *See* R. at 19-20 (discussing figures). This certainly squares with improved ambulation and the greater / regular physical activity reflected in the record.

[7] Even pre-11/14/14, there is substantial record evidence supporting the ALJ's conclusions. On October 1, 2014 (post-fall), for instance, Dr. Lukins reported that Gum's "knee [wa]s stable in all places," had "no effusion," and, per Gum himself, "it [wa]s also improving." R. at 317. On July 21, 2014, Lukins advised that Gum's "knee is ligamentously stable" and "has good range of motion." R. at 165. In March 2014, Gum "continue[d] to improve." R. at 259. On February 24, 2014, Gum's pain had been "improv[ing] on a daily basis." R. at 260. In January 2014, Gum "ha[d] no tenderness to his knee generally," "a stable knee overall," a "good range of motion[,] and no effusion." R. at 263. Soon after the precipitating 2013 event, the Bluegrass Community Hospital noted "[n]o acute fracture or dislocation" and "[n]o significant degenerative or arthritic change" in Gum's left knee. R. at 330; *see also, e.g.*, R. at 328 ("At their worst the symptoms were moderate[.]").

2016, two months before the ALJ hearing, ARNP Brown again observed "normal gait." R. at 406.

To be sure, Gum would have preferred the ALJ to give more weight to McEldowney's evaluation and opinions, but Judge Paris here encountered a record with conflicting or evolving medical proof on the severity of the left knee impairment and reasonably weighed the differing offerings. There is substantial record evidence—from before *and* after November 14, 2014, to include Gum's own testimony to the ALJ in 2016—to support ALJ Paris's findings (even if there is evidence to support a finding more in accord with Dr. McEldowney's conclusions). The Court's role is not, however, to re-weigh the proof, try the case *de novo*, or usurp the ALJ's primary decision-making responsibility. The Court does not reverse the Commissioner's denial of benefits merely because the record contains evidence, even substantial evidence, to support a grant. To the contrary, the Court must affirm as long as substantial evidence supports the ALJ's decision, even if the Court might have decided the case differently on first consideration. The Court, cognizant of its limited reviewing role, and upon appraisal of the entire record, concludes that substantial evidence (which is, remember, less than a preponderance) supports ALJ Paris's findings and weighing of McEldowney's opinions, and thus declines to disturb them.

Next, though connectedly, Gum argues, referencing state consulting physician Dr. Jack Reed, that "the ALJ erred by relying on the outdated opinion from a non-examining medical professional who did not have the opportunity to review significant evidence in this matter." DE #15-2, at 12. Judge Paris did, indeed, give Dr. Reed's opinions (R. at 78-82) "significant weight" because he found them "consistent with the totality of the record." R. at 22. Dr. Reed's evaluation is from 11/13/14, the day before McEldowney's. The ALJ, of course, had the benefit of the full record.

As a fundamental starting point, no single medical source is alone necessary or conclusive in determining RFC; thus, an opinion from a non-examining consultant may be the basis for the ALJ's opinion, even if it conflicts with an examiner's. *See Blakley*, 581 F.3d at 409; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error."). Further, an ALJ is "entitled to assign significant weight to the opinions from . . . medical consultants despite the fact that they did not review all of the medical records." *Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012); *accord Cook v. Astrue*, 629 F. Supp. 2d 925, 932-33 (W.D. Mo. 2009) (refusing to adopt "a per se rule that failure to send medical records to be reviewed . . . automatically results in the opinion of that doctor not being entitled to substantial weight").[8]

---

[8] A medical source's inability to examine the full record certainly is not ideal, *see, e.g.*, *Barrett v. Astrue*, No. 09-11-GWU, 2009 WL 3270264, at *4 (E.D. Ky. Oct. 9, 2009) (remanding when doctor did not review critical MRI results and "did not have the opportunity to see and review the numerous exhibits which came after his November 2004 review"), but on these facts, for the reasons explained herein, does not require remand. There is no persuasive suggestion that Dr. Reed failed to consult "a substantial part" of Gum's pertinent medical records—instead, the complaint centers on Reed's non-review of McEldowney's lone report. *See, e.g.*, *Childress v. Berryhill*, No. 1:16-CV-119-HBB, 2017 WL 758941, at *4 (W.D. Ky. Feb. 27, 2017) (remanding when doctor did not review critical "MRIs of [claimant's] cervical spine, lumbar spine, and right shoulder"); DE #15-2, at 14 (decrying Reed's lack of "opportunity to review the thorough examination report from Dr. McEldowney"). The Court sees no logical concern regarding non-review of Dr. Hamon's 1/20/15 report, which addressed only "shoulder pain" and is from months after Gum claims to be disabled. R. at 397-98. [Given the timing, McEldowney could not have reviewed that document, either.] The same comparative analysis applies to Nurse Brown's

Here, of course, the ALJ thoroughly considered McEldowney's post-Reed evaluation and still found Gum not to be disabled. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if Dr. Hernandez's [(a state-agency consultant's)] RFC was completed without knowledge of [certain medical] issues, however, the record reflects that the ALJ considered them."). The ALJ came to that conclusion via a comprehensive review of all documents, finding McEldowney's report inconsistent with "the totality of th[e] record." R. at 21-22. McEldowney is indeed the lone medical voice of record supporting the limitation levels expressed in his evaluation, as described in more detail throughout this Opinion.

Accordingly, here, when the ALJ explicitly considered the disputed piece of medical proof and the post-McEldowney-evaluation proof is reasonably inconsistent with the record re-weighing Plaintiff urges, there is no error in assigning significant weight to the consultant's conclusions. *Ealy*, 594 F.3d at 513; *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (affirming decision where "state agency physicians' opinions . . . did not account for changes in [the claimant's] medical condition" but where the ALJ "considered the medical examinations that occurred after [the] assessment . . . and took into account any relevant changes in [the claimant's] condition"). Nothing in Reed's report suggests that knowledge of McEldowney's evaluation, on this record, would have altered the expressed views. Indeed, Reed was aware of Gum's knee issues, noting some "[t]enderness medially" but also that Gum had "denie[d] abnormal gait." R. at 80. This conspicuously contrasts with McEldowney's notation of "a noticeable gait abnormality." R. at 323. Further, post-McEldowney-evaluation, Nurse

9/24/14 record, indicating that Gum "fell and hurt his knee and left shoulder." R. at 311-14. That report is internally self-contradictory, noting later that Gum's *sole* musculoskeletal complaint was "joint pain (left shoulder)"—*i.e.*, not knee-related R. at 313; *see also* DE #15-2, at 14 (criticizing Reed's lack of "knowledge of the subsequent records document[ing Gum]'s knee instability, causing him to fall down stairs and injury his shoulder"). A report primarily concerning shoulder issues would not have reasonably impacted Reed's opinion regarding knee-based impairment, when (again) Reed was generally aware of Gum's knee issues.

Practitioner Brown consistently noted Gum's "normal" gait and station, and never mentioned use of a cane in ambulation. R. at 340, 350, 359. There is no indication here that Reed knowing McEldowney's outlier opinions on the knee topic would have changed Reed's own conclusions. The ALJ, confronting dueling opinions and assessments, measured the overall proof in a reasonable manner, rationally accounted for the McEldowney and Reed reports, and rested his conclusions on substantial evidence.[9]

## III.   CONCLUSION

For the reasons stated, the Court **GRANTS** the Commissioner's motion for summary judgment (DE #18) and **DENIES** Gum's motion for judgment on the pleadings (DE #15). The Court will enter a separate Judgment.

This the 8th day of March, 2018.

Signed By:

Robert E. Wier

United States Magistrate Judge

---

[9] At the conclusion of his brief, Gum tacks on a one-paragraph argument that "[a]s a result of" the alleged "errors" identified above, the "hypothetical questions to the [VE] are unsupported by substantial evidence." DE #15-2, at 15. Gum asserts that the "ALJ's Step Five finding . . . is therefore the product of legal error[.]" *Id.* Because the Court finds no error in ALJ Paris's RFC determination, the Court also rejects Gum's cursory, RFC-error-dependent VE-hypothetical contention. Per the above analysis, the ALJ's hypothetical was proper, and he appropriately used the VE's answers in the Step Five determination. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004); *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The Court rejects the premise of this argument.